**Robert A. BERDELLA, Appellant,**

**v.**

**Paul K. DELO; Thelma Branson; and Frank J. Murphy, individually and in his official capacity, Appellees.**

**No. 91–2823.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1992.

Decided Aug. 4, 1992.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 14, 1992.

---

Craig M. Schmid, St. Louis, Mo., argued, for appellant.

Greg A. Perry, Jefferson City, Mo. and Mary E. Kenney, argued, William A. Lynch, Kansas City, Mo., on the brief, for appellees.

Before JOHN R. GIBSON and BEAM, Circuit Judges, and ARNOLD,* District Judge.

BEAM, Circuit Judge.

On October 17, 1989, Robert A. Berdella, then, an inmate at the Potosi Correctional Center (PCC) in Missouri,[1] filed a 42 U.S.C. § 1983 complaint against Paul Delo, the superintendent of the PCC, Thelma Branson, the mail room clerk at the PCC, and Frank J. Murphy, the court-appointed trustee of Berdella's estate. On July 11, 1990, the district court granted summary judgment in favor of Murphy based on the rule of res judicata. Nearly a year later, on June 26, 1991, the court granted summary judgment in favor of Delo and Branson based, in part, on qualified immunity. Berdella appeals these orders. We hold that Berdella's notice of appeal is insufficient as to the district court's July 11, 1990, order and affirm the court's June 26, 1991, order.

## I. BACKGROUND

Berdella is currently serving a life sentence without the possibility of parole or probation. After Berdella's sentencing, Murphy was appointed trustee of his estate pursuant to Missouri state law. *See* Mo. Ann.Stat. ch. 460 (Vernon 1956 & Supp. 1992). Disagreements soon arose between Berdella and Murphy over Murphy's management of the estate. In particular, Berdella objected to limits Murphy imposed on his spending.

In an attempt to circumvent Murphy's spending limits, Berdella began to send unstamped third-party correspondence to Murphy instead of stamping the correspondence himself and mailing it directly from the PCC. In response, Murphy twice wrote to the Missouri Department of Corrections (Department), asking the Department to restrict Berdella's mail to him. Under Department policies governing inmate mail then in effect, the Department honored written requests by persons outside the prison not to be sent mail from inmates.[2] Although Murphy only sought to prevent

---

* The HONORABLE MORRIS S. ARNOLD, United States District Judge for the Western District of Arkansas, sitting by designation.

1. Berdella is currently incarcerated at the Jefferson City Correctional Center in Missouri.

2. The Department policy in question reads: There shall be no restrictions on the number of persons to whom an inmate may write nor the number of letters an inmate may mail except as outlined in this procedure.

1. Persons who do not wish to receive mail from an inmate may request in writing that the correspondence be terminated. This will include the parent or legal guardian of any person who is under 18 years of age. The inmate should be informed in writing by institutional staff that the correspondence is not to be continued. Such correspondence should not be resumed unless authorized in writing by the person wishing to resume correspondence.

Berdella from sending third-party correspondence to him, his letters to the Department were ambiguous and could easily be read as requesting that he not receive any mail from Berdella.[3] The Department interpreted Murphy's letters in this manner.[4]

Pursuant to the Department's policy, Berdella was notified about Murphy's request not to receive mail from him. When Berdella later attempted to mail a letter to Murphy, Branson, who knew about the restriction on Berdella's mail, conferred with Delo. Following her discussion with Delo, Branson refused to post the letter and reminded Berdella in writing of Murphy's request. The written reminder also warned Berdella that further attempts to post mail to Murphy would result in disciplinary action.

As a result of the continuing dispute between Berdella and Murphy over the management of Berdella's estate, Berdella filed several suits against Murphy. In the present section 1983 action, Berdella alleged that Murphy wrongfully limited his prison spending and directed the prison staff not to post his mail in order to prevent him from serving legal documents on Murphy. Berdella also asserted claims against Delo and Branson, alleging that the restrictions on his mail to Murphy and the threat of disciplinary action violated his constitutional rights.

## II. DISCUSSION

### A. Murphy

■ Berdella asserts that the district court erred in granting Murphy summary judgment. Murphy counters that we need not reach the merits of this issue because Berdella failed to appeal the district court's July 11, 1990, order dismissing him. We agree. The Federal Rules of Appellate Procedure require a notice of appeal to "designate the judgment, order or part thereof appealed from." Fed.R.App.P. 3(c). Berdella's notice, however, only refers to the district court's June 26, 1991, order. When Berdella filed his notice of appeal, he also filed a document entitled "Motion for Appeal from Full Record." Although the motion indicates that Berdella wished to appeal the "full record," the motion refers in particular to the June 26, 1991, order and only that order. Murphy's name does not appear in the caption of either the notice of appeal or the motion for appeal, and the July 11, 1990, order was not attached to either document.[5]

■ Berdella urges us to construe his notice of appeal liberally because he is a *pro se* litigant. He emphasizes that his motion for appeal states he is appealing from the "full record." Although we traditionally construe notices of appeal liberally, particularly those of *pro se* litigants, an intent to appeal the judgment in question must be apparent and there must be no prejudice to the adverse party. *See, e.g., Huston v. Mitchell*, 908 F.2d 275, 277 (8th Cir.1990); *McAninch v. Traders Nat'l Bank of Kansas City*, 779 F.2d 466, 467 n. 2 (8th Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2917, 91 L.Ed.2d 545 (1986);

---

2. Any time a restriction is imposed as noted above, written documentation should be placed in the inmate's classification file. Mo. Dep't of Corrections, Proc. No. IS13–1.1(III)(A).

3. Murphy's first letter, dated May 17, 1989, reads in pertinent part:

Also, I do not want Mr. Berdella's correspondence sent to me. If possible, I would prefer to have just the green check with its description of the item. I do not consider myself Mr. Berdella's censor. If I have questions after receiving a green check I will call you.

Murphy's second letter, undated, reads in pertinent part:

Also, I wrote once before saying that I did not want to receive Mr. Berdella's correspon-

dence. I know this may represent an inconvenience, but I will appreciate your cooperation in this regard.

4. When Murphy later learned about the misunderstanding he clarified his request.

5. Berdella also filed an amended notice of appeal on October 2, 1991, well beyond the 30-day limit provided in Rule 4(a). The amended notice referred to several district court orders, including the July 11, 1990, order. This notice, however, was treated as initiating a separate appeal which was dismissed for lack of jurisdiction. The dismissal was without prejudice to Berdella's first appeal. *See Berdella v. Delo*, No. 91-3460 (8th Cir. Nov. 19, 1991).

*McGowne v. Challenge–Cook Bros., Inc.,* 672 F.2d 652, 659 (8th Cir.1982). In *McAninch,* for example, the appellants' notice of appeal failed to list an order granting summary judgment to certain defendants and another order dismissing one of the plaintiffs. We held that intent to appeal these orders was apparent from the procedural history of the case and the inclusion of the orders on the appeal information form. *See McAninch,* 779 F.2d at 467 n. 2.

■ We do not believe that Berdella's intent to appeal the district court's July 11, 1990, order is apparent from either his notice of appeal or the procedural history of the case. The July 11, 1990, order and the June 26, 1991, order addressed distinct and severable issues. An appeal of one order, therefore, would not inherently imply a desire to appeal the other. Even if we consider Berdella's motion for appeal in evaluating his notice of appeal, the notice still does not evince an intent to appeal the July 11, 1990, order. Berdella cites no authority for the proposition that the words "full record" sufficiently indicate an intent to appeal any and every order issued by the district court in the course of a suit, and we refuse to so hold. Berdella also ignores the fact that his motion for appeal, like his notice of appeal, specifically states that he is appealing the June 26, 1991, order and contains no reference to the July 11, 1990, order.[6]

In addition, the procedural history of this case lends little support to Berdella's assertion that his intent to appeal the July 11, 1990, order was apparent. Although Berdella could not have challenged the order before entry of final judgment unless he received permission for an interlocutory appeal, this fact alone is not dispositive. At the time Berdella filed his notice of appeal, he was also asserting similar claims against Murphy in two separate actions in Missouri state court. *See Berdella v. Murphy,* No. CV91–5199 (Jackson County, Mo. Cir.Ct.); *Berdella v. Murphy,* No. CV191–579CC (Cole County, Mo.Cir.Ct.). Given the existence of these state actions, Berdella's failure to include the July 11, 1990, order in his notice of appeal is demonstrative, if anything, of an intent to abandon the federal forum and pursue his claims against Murphy in state court.

■ Berdella's omission of any reference to the district court's July 11, 1990, order in his notice of appeal is more than a mere technical deficiency. Berdella has failed to comply with Rule 3(c) and, as such, we lack jurisdiction to consider his argument that the district court erred in granting Murphy summary judgment. *See Yoder v. Nutrena Mills, Inc.,* 294 F.2d 505, 506 n. 1 (8th Cir.1961); *cf. Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 317, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988) (court of appeals lacked jurisdiction over party in class action where party's name inadvertently omitted from notice of appeal).

### B. Delo and Branson

Berdella also contends that the district court erred in granting Delo and Branson summary judgment. On appeal, Berdella essentially argues that Delo and Branson interfered with his right to correspond with non-inmates in violation of the First Amendment and denied him meaningful access to the courts in violation of the First and Fourteenth Amendments.[7] Delo and

---

6. Berdella additionally contends that his notice of appeal is sufficient because the June 26, 1991, order constitutes a final judgment in which all interlocutory orders, including the July 11, 1990, order merged. Berdella's analysis is correct to the extent that the appeal of a final order permits the review of issues resolved in earlier orders, if proper notice is given. *See Drake v. Southwestern Bell Tel. Co.,* 553 F.2d 1185, 1186 (8th Cir.1977); 15A *Wright, Miller & Cooper, Federal Practice & Procedure* § 3905.1 (2d ed. 1992). Berdella carries this principle too far here, however, in asserting that the appeal of a final order alone also serves as sufficient notice

of appeal for separate, distinct issues and theories of recovery addressed in earlier orders.

7. The district court did not classify Berdella's claims in the same manner as we do. In particular, the district court never expressly recognized that Berdella's First Amendment arguments asserted more than a violation of his right to correspond with non-inmates. Although the district court rejected Berdella's denial of meaningful access to the courts claim under the Fourteenth Amendment, it held that Berdella's right to correspond under the First Amendment was violated because the Depart-

Branson respond in part by asserting that Berdella has failed to set forth facts showing a constitutional violation occurred. We agree.

In reviewing a district court's grant of summary judgment we apply the same standard as the district court. *E.g., Meyer v. Barnes*, 867 F.2d 464, 466 (8th Cir.), *cert. denied*, 493 U.S. 825, 110 S.Ct. 86, 107 L.Ed.2d 51 (1989). Summary judgment is proper where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The nonmoving party "may not rest upon the mere allegations or denials of [its] pleadings, but ... must set forth specific facts showing there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■■■■ Berdella initially claims that the Department's policy honoring a person's request not to receive mail from an inmate violates his First Amendment right to correspond with non-inmates. We disagree. The Supreme Court has held that restrictions on outgoing inmate mail must be generally necessary to protect a legitimate government interest. *See Procunier v. Martinez*, 416 U.S. 396, 414, 94 S.Ct. 1800, 1811–12, 40 L.Ed.2d 224 (1974), *overruled in part by Thornburgh v. Abbott*, 490 U.S. 401, 411–14, 109 S.Ct. 1874, 1880–82, 104 L.Ed.2d 459 (1989) (limiting *Procunier* to outgoing mail).[8] Applying the *Procunier*

standard, this court held invalid a prison policy that prohibited inmates from corresponding with anyone who had not previously consented to receive mail. *Finney v. Arkansas Bd. of Correction*, 505 F.2d 194, 211–12 (8th Cir.1974). We indicated in *Finney*, however, that the government's interest in protecting the public from harassment by inmates would justify prohibiting an inmate from sending mail to persons who have affirmatively requested that mail not be received from an inmate. *Id.* at 211.

We see no reason not to follow *Finney* here. The Department's policy is generally necessary to serve the government's legitimate interest in protecting the public from harassment. Summary judgment in favor of Delo and Branson as to this aspect of Berdella's First Amendment claim, therefore, is proper.

■■■ Berdella next asserts that Delo and Branson's enforcement of the Department's policy denied him meaningful access to the courts in violation of the First and Fourteenth Amendment. Although we are concerned with the potential effects of the Department's policy and believe that the policy should contain an exception for mail related to court proceedings, we conclude that Berdella failed to show that he was prejudiced by Delo and Branson's conduct.

■■■ It is well established that an inmate has a constitutional right to meaningful access to the courts. *See, e.g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52

ment's policy lacked adequate safeguards to insure that an inmate's communication with a party-opponent was not completely severed. In our view, however, this analysis concerns Berdella's meaningful access to the courts, not his right to correspond. As such, although we affirm the district court's decision, our reasoning differs slightly.

**8.** The district court held that the less-stringent rational basis standard established in *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261–62, 96 L.Ed.2d 64 (1987), for reviewing restrictions on an inmate's constitutional rights applied in this case. The court reasoned that *Procunier* did not apply because the *Procunier* Court was concerned primarily with the rights of non-inmates to receive mail from inmates. *See Pro-*

*cunier*, 416 U.S. at 408, 94 S.Ct. at 1808–09. Here, in contrast, the only rights affected were Berdella's because Murphy did not wish to receive mail from Berdella.

The district court's reasoning, however, does not fully comport with the Supreme Court's analysis in *Thornburgh*, which simply drew a distinction between outgoing and incoming mail. The *Thornburgh* Court applied the less-stringent *Turner* standard to restrictions on incoming mail because of the heightened security risk presented by such mail, not because only the inmate's rights were affected by the restrictions. *See Thornburgh*, 490 U.S. at 411–14, 109 S.Ct. at 1880–82. Because we find no heightened security risk presented by outgoing mail to unwilling recipients, we conclude the *Procunier* standard still applies in the present case.

L.Ed.2d 72 (1977).[9] To assert a successful claim for denial of meaningful access to the courts, however, an inmate must demonstrate that he suffered prejudice. *See, e.g., Flittie v. Solem,* 827 F.2d 276, 280 (8th Cir.1987); *Grady v. Wilken,* 735 F.2d 303, 305–06 (8th Cir.1984). In *Grady,* for example, an inmate alleged that prison officials had denied him meaningful access to the courts when his transfer to a segregated unit for violating prison rules resulted in the loss of his mailing privileges for twenty days. The inmate had a lawsuit pending during this period. We held that the district court properly granted summary judgment to the prison officials because the policy involved was constitutional under *Procunier* and the inmate had failed to demonstrate that the loss of mailing privileges prejudiced his lawsuit. *Grady,* 735 F.2d at 305–06.

Like the inmate in *Grady,* Berdella has not shown that the restrictions on his mail denied him meaningful access to the courts. As discussed above, the Department's policy is valid under *Procunier* and Berdella has failed to show that he suffered prejudice as a result of his inability to communicate with Murphy either as trustee of his estate or as a party-opponent.

 Although a trustee of an inmate's estate under chapter 460 has a duty to provide for the inmate's support, the primary purpose of the trust is to protect the legitimate claims of the inmate's creditors and to prevent the inmate from wasting the estate. *See Berdella v. Pender,* 821 S.W.2d 846, 851 (Mo.1991). In managing the estate, the trustee may consider, but need not follow, the inmate's instructions. *See Thompson v. Bond,* 421 F.Supp. 878, 883 (W.D.Mo.1976). Because litigating every disagreement between the inmate and the trustee would undermine the trust's purpose of avoiding wasting of the estate, the inmate must allege a violation of the trustee's duty, not merely a dislike of the trustee's decisions. *Berdella,* 821 S.W.2d at 851. Although Berdella is not

pleased with how Murphy has managed his estate, he has failed to set forth facts showing he was prejudiced by his inability to communicate with Murphy as trustee of the estate.

We also find no prejudice resulting from Berdella's inability to communicate with Murphy as a party-opponent. Although the restriction on Berdella's mail threatened to prejudice his actions against Murphy by interfering with his ability to serve court documents on Murphy, Berdella served several documents through a third-party and has not set forth facts showing he was prejudiced by his alleged inability to serve additional documents through similar or other alternative means. Summary judgment in favor of Delo and Branson on Berdella's claim that he was denied meaningful access to the courts under the First and Fourteenth Amendments, therefore, is proper.

## III. CONCLUSION

For the reasons stated above, we lack jurisdiction to address Berdella's objections to the district court's order granting summary judgment to Murphy and we affirm the district court's order granting summary judgment to Delo and Branson.

---

**9.** This right may stem from both the First Amendment right to petition and the Fourteenth Amendment rights to due process and equal

protection. *See Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427 n. 7 (8th Cir.1986).